# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

U.S. DISTRICT COURT
BANGOR, MAINE
RECEIVED AND FILED

2014 MAR 31  A 9: 45

_____
DEPUTY CLERK

## PRO SE CIVIL COMPLAINT
### Federal Tort Claims Act

Case No.

**I. CASE CAPTION: Parties to this Civil Action**:
Pursuant to Fed. R. Civ. P. 10(a), the names of **all** parties must appear in the case caption. The court will **not** consider a claim against any defendant who is not listed in the caption.

**1. Plaintiff(s) Name(s):**   **Address(es):**   **Telephone No.**

Daniel B. VanWart   PO BOX 102  Holden, ME 04429   207-249-5002

**2. Defendant(s) Name(s):**   **Address(es) If known:**

UNITED STATES OF AMERICA   United States Attorney's Office
202 Harlow Street, Room 111
Bangor, ME 04401

The Department of Veterans Affairs (VA) Regional Counsel, Jeffrey D. Stacey, said I had to list the United States as defendant not the VA.

VanWart 1

## II. STATEMENT OF CLAIM(S)

State briefly the facts of your claim. Describe how each defendant is involved. You do not need to give legal arguments or cite cases or statutes. Use as much space as you need to state the facts. (Attach extra sheets if necessary.)

### 1. When did the events occur?

This started with my claim for service connected depression on Feb 14, 2003 and the Carl Metzger exam occurred Nov 10, 2003. Through fraudulent concealment as to the exam results/diagnosis and refusal to allow a Privacy Officer Review, by the Department of Veterans Affairs and it employees, I was lead to believe I was diagnosed with Borderline Personality Disorder. Jan 22, 2013 a Department of Veterans Affairs doctor tested me for blunted ACTH a condition commonly found in depressed patients. Jan 27, 2013 based on the fact that the VA was looking to see if I had blunted ACTH I looked into the doctor the VA said diagnosed me with borderline personality disorder and found that Carl Metzger was found incompetent and lost his license in 2004. This is when I finally knew there was a problem with my exam and/or diagnosis.

### 2. What happened?

- Feb 14, 2003 as a Department of Veterans Affairs (VA) employee at Togus and Veteran of the United States Navy I filed a clam for service connected conditions.

- October 23, 2003 Department of Veterans Affairs employees ordered QTC contractor exams for my claimed service connected conditions. I am a Department of Veterans Affairs Employee Veteran. My exam was to be ordered at the VA Medical Center (VAMC) in Boston, not through a contractor in Portland, Maine, according to VA policy. This is where things started to wrong in the exam process, and is one of the reasons why I think the Department of Veterans Affairs and its employees tried to conceal/suppress the exam from me and the Privacy Officer Review process.

**M21-1MR, Part III, Subpart iv, Chapter 3, Section B**

| | |
|---|---|
| ***b. Scheduling Employee-Veteran Examinations*** | If the claims folder contains *VA Form 20-0344, Annual Certification of Veteran Status and Veteran Relatives,* or there is a "VA Employee" flash on the outside of the claims folder, determine what regional office (RO) employs the veteran and note this information clearly on the examination request. **The examination is scheduled at the nearest, most appropriate VAMC.** |
| | ***Important***: Except in certain instances, do not examine the veteran at his/her place of employment. Make every attempt to avoid a conflict of interest when scheduling the examinations of VA employees. |
| | ***Reference***: For more information on exceptions when an employee can be examined at his/her place of employment, see M21-1MR, Part III, Subpart ii, 1.C.14.e. |

VanWart 2

- Nov 10, 2003 an exam was conducted in Portland, Maine by a Carl Metzger.

- Feb 2, 2004 my claim for Depression was denied by Department of Veterans Affairs due to a claimed **diagnosis** of borderline personality disorder.

- March 5, 2004 I filed a Notice of Disagreement.

- May 7, 2004 I resigned my position with the Department of Veterans Affairs' due to severe state of depression. This was the organization I wanted to make my career.

- May 21, 2004 I sent a statement in support of my Notice of Disagreement, with supporting documents, in which I requested an amendment to the Metzger exam along with a copy of the VA's policy "Right to Request an Amendment".



- May 25, 2004 I sent yet another Statement in Support of my Notice of Disagreement with more supporting documents.

- Oct 4, 2004 a Supplemental Statement of the Case was sent to me by the Department of Veterans Affairs. In the Supplemental Statement of the Case, my request for Privacy Officer Review was acknowledged but my request was not forwarded on to

VanWart 3

the Privacy Officer. Instead it was determined, by the two Federal Government employees who reviewed the exam, as follows:

"You recently submitted a request for amendment to the QTC psychiatric examination conducted on 11-10-03. You report that the current diagnosis, provided by a medical examiner of borderline personality disorder, is inaccurate. This issue has no jurisdiction with respect to our decision for compensation purposes. Your request for amendment of information only should be made with VA's healthcare facility Privacy Officer.

It should also be noted that if a diagnosis of a mental disorder does not conform to DSM-IV or is not supported by the findings on the examination report, the rating agency shall return the report to the examiner to substantiate the **diagnosis**. There is no indication that the VA examination failed to conform to the provisions outlined in DSM-IV based on the findings from this examination report. The examination conducted by QTC Medical Services in November of 2003 has not been found to be insufficient or inadequate based on our current review."

This was prepared by Federal Government Employee W. Drinkwater, RVSR and Approved by Federal Government Employee D. Keef, RVSR.

If a request from a Veteran to amend a C&P examination report is received by the Department of Veterans Affairs Regional Office (VARO), the request must be forwarded immediately to the attention of the Privacy Officer at the VHA health care facility that performed the examination. The corresponding Privacy Officer can be located through http://vaww.vhaco.va.gov/privacy/Documents/VHACOPOList.doc. NOTE: This is an internal VA site not accessible to the public. The time frame for processing a request begins once the VHA Privacy Officer has received the request.

As this was a contract exam, ordered inappropriately by Department of Veterans Affairs Regional Office (VARO), there was no VA health care facility that maintained the record which was known to me. I presented my request for Privacy Officer Review to the Department of Veterans Affairs Regional Office as they ordered and maintained the exam. The VARO was obligated to forward the request on to the appropriate VA health care facility. The VARO clearly opted not to do so.

- May 8, 2006 The Board Of Veterans Appeals, Federal Government Employee, Keith W. Allen, Veterans Law Judge, Board of Veterans Appeals, denied my appeal for service connected depression as follows:

"The November 2003 VA examiner, following consideration of the veteran's assertions and medical history and a comprehensive mental status evaluation of him, determined that he did not have a psychiatric disorder. Instead he was **diagnosed** with a chronic borderline personality disorder. And this does not entitle him to service connection because, as a developmental condition, **it is not service connectable as a matter of law** in the absence of medical evidence of additional disability from superimposed disease or injury causing aggravation of this pre-existing condition. 38 C.F.R. 3.303(c), 4.9 See, too Sabonis v. Brown, 6 Vet. App 426 (1994)."

Yet again I am reassured, this time by a Veterans Law Judge, skilled in reading exam reports, that I received a **diagnosis** of borderline personality disorder.

MEDICAL EVIDENCE INADEQUATE, MUST REMAND
§   If the BVA finds that the medical evidence in the record is not adequate, it must remand for further development. See *Tucker v. Derwinski*, 2 Vet.App. 201, 203 (1992).

- Aug 3, 2011, after years of suffering with depression, claimed by the Department of Veterans Affairs to be diagnosed borderline personality disorder, the Department of Veteran Affairs accepted me for treatment as a Priority Group 5 (low income non-service connected veteran).

- Dec 18, 2012 hired by the Department of Health and Human Services for the State of Maine as an eligibility specialist. Work I felt I might be able to do as it is similar to that that I did for the Department of Veterans Affairs. I was desperate and on the edge of homelessness. I am now out on Family Medical Leave and currently in danger of losing this position due to depression, cognitive disorder, and anxiety.

- Jan 22, 2013 I had ACTH stimulation test conducted by the Department of Veterans Affairs at Togus. I did not request this test myself. The Department of Veterans Affairs ordered the test for their own purposes. I was covered in Hives and I believe they were trying to find the cause among other things.

- Not knowing what blunted ACTH really was, I conducted a Google search for "Blunted ACTH" and the first thing on the screen was that blunted ACTH is directly related to patients with Depression. Depression can cause hives and my VA medical record was positive for the claim of depression.

- Jan 27, 2013 Bases on the fact that the VA was conducting testing on me for a condition associated with depression I conducted a search on the internet and found that Carl Metzger was under investigation, for incompetence, by the State of Maine prior to his conducting the exam on me Nov 10, 2003. His license had expired, over one year earlier, on Sep 30, 2002 and his license renewal application was placed on hold Sep 11, 2002 pending resolution of the complaint. Nov 30, 2004 the decision was made by the State of Maine to deny his license. This is when I finally knew the diagnosis of borderline personality disorder was likely wrong or inadequate in some way. This is what they were hiding for all those years. Not only was the exam ordered in violation of VA policy the QTC contract Doctor was found incompetent in 2004. This finding of incompetence was long before Keith W. Allen, Veterans Law Judge, Board of Veterans Appeals (BVA) made his decision to deny my claim in 2006. If Keith W. Allen, Veterans Law Judge, Board of Veterans Appeals (BVA) had remanded the exam as required, by VA policy, the authoring doctor, Carl Metzger, would not have been available to correct the exam and his incompetence would have been reveled.

  If the Department of Veterans Affairs had allowed the exam to be reviewed, as requested, through the properly established Privacy Officer Review process, the truth of the exam inadequateness/incorrectness may have been evident much sooner.

- Feb 15, 2013 submitted SF 95 FTCA claim with the Department of Veterans Affairs.

- Feb 22, 2013 Dr. JOHN T DEVLIN of the Department of Veterans Affairs called me and reported that I have a positive blunted ACTH stimulation test result.

- Feb 25, 2013 I was accepted into the practice of the Center for Family Medicine in Bangor, Maine. I stopped going to the VA in Augusta as I had insurance and a medical provider close to home now.

- June 6, 2013 my Administrative Tort Claim #2496, was decided by Federal Government Employee, Cynthia L. Tyler, Regional Counsel, Department of Veterans Affairs, as follows:

  "Our review of this claim did not reveal the existence of any negligent or wrongful act on the part of any employee of the Department of Veterans Affairs acting within the scope of his or her employment. Therefore, this claim is denied."

- September 4, 2013 Larry Schaefer, Vice President, Provider Relations, QTC - A Lockheed Martin Company, sent me documents indicating that they were aware that Carl Metzger was under investigation by the State of Maine on Sep 11, 2002.

- Oct 28, 2013 my Administrative Tort Claim #2496 – Request for Reconsideration was decided by Jeffrey D. Stacy, Regional Counsel, Department of Veterans Affairs, as follows:

  "We have completed our reconsideration of this claim. A review of all the circumstances associated with your claim does not reveal any negligence on the part of the Department of Veterans Affairs or any of its employees, which harmed you. Accordingly, your claim is again denied".

There is significant evidence, on record, of reassurances by the VA Examiner, Rating Veterans Service Representatives, and a Veterans Law Judge that I had received a **diagnosis**[2] of borderline personality disorder from the Department of Veterans Affairs. As such, and was clearly stated, I was bared **by law**, from further pursuit of this claim. Multiple Department of Veterans Affairs employees led me to believe, and place my reliance on, the fact that this was a **diagnosed** developmental condition, so as to establish it of "no concern", in an effort to put me off further pursuit of the claim.[1] This diagnosis was presented to me as a medical fact, in a doctor patient relationship, and perpetuated throughout the claims process for years. I was actually conditioned to believe that I had borderline personality disorder by the Department of Veterans Affairs and its employees.

The Board noted that a borderline personality disorder is a constitutional or developmental abnormality and not considered a disability under the law. Congenital or developmental defects, such as personality disorders, are not diseases or injuries for which service connection may be granted. 38 C.F.R. §§ 3.303(c), 4.9 (1996). Moreover, the United States Court of Veterans Appeals (Court) has also held that in a case where the law is dispositive of the claim, the claim should be denied because of lack of entitlement under the law. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (in which the Court upheld

VanWart 6

the Board's denial of benefits to the veteran because there was simply no authority in law which would permit the VA to grant appellant's requests). Therefore, the claim must also be denied because it is by law not one for which service connection may be granted.

I requested a Privacy Officer Review and Amendment of my exam.[3] The request and its associated supporting evidence is clearly indicated in my file. A Privacy Officer Review is **my right**. I included, in my request for Privacy Officer Review, the definition of "Amendment. The alteration of health information by modification, correction, addition or deletion", as taken directly from the VHA Privacy Policy Web Training used by Department of Veterans Affairs employees. I did this so there would be no confusion as to the nature or intent of the request. I was repeatedly denied my rights by all Department of Veterans Affairs employees concerned. There is clear evidence in the file that the Department of Veterans Affairs employees knew or should have known these rights existed but they wrongfully and/or neglectfully disregarded them. The Board of Veterans Appeals blatantly disregarded the request for review and amendment of my exam despite it being clearly evidenced in the file and again in the "Statement of The Case". The Board of Veterans Appeals "Appeal Certification Worksheet" was completed and again the request for Privacy Officer Review was not acknowledged and was even indicated on the worksheet that the request did not even exist despite the evidence in the record. Fraudulent concealment persisted throughout the Claims, Appeal, and Board of Veterans Appeals Quality Review Process. I could not even get a copy of the exam when I requested it. The doctor was prohibited by the VA from giving me a copy, as shown below, and the VA did not provide a copy of the exam, as they should have, on July 28, 2004, when I had asked for a copy of my records.

---

**QTC Medical Services, Inc.**
**Notification of Rescheduled Appointment**

**NOTICE TO DISABILITY CLAIMANTS**
**ON PRIVACY AND SECURITY OF MEDICAL INFORMATION**

This evaluation service is not covered under the Privacy Rule of Health Insurance Portability and Accountability Act (HIPAA). QTC and the physician are prohibited from disclosing any of your information to anyone, unless the disclosure is approved by the Department of Veterans Affairs. Therefore, should you require any of your own medical information, please contact the Department of Veterans Affairs.

---

This was included as part of my Oct 30, 2003 Notification of Appointment
from QTC for the Carl Metzger exam.

VanWart 7

Despite repeated efforts to learn the true nature of my exam and the examiner I did not obtain the answer until January 27, 2013. If it was not for the blunted ACTH test I would have never known the truth, to this very day, as the Department of Veterans Affairs and its employees certainly did not tell me when directly asked to do so. I followed VA policy and did everything in my power to get at the truth but the VA knowingly and repeatedly concealed the truth from me. This is, but not limited to, a case of fraudulent concealment, intentional infliction of emotional distress, and negligent hiring and supervision on the part of the Department of Veterans Affairs.

1. Rosales v. U.S., 824 F.2d 799 (9th Cir. 1987); Burgess v. U.S., 744 F.2d 771 (11th Cir. 1984).

**2. DSM-IV, MULTIAXIAL DIAGNOSIS**
§        Mental disorders are categorized in two classification systems. At the time of this writing, the latest manual is the Diagnostic and Statistical Manual of Mental Disorders (4th Edition) (DSM-IV) published in 1994 by the American Psychiatric Association and the International Classification of Diseases [an international classification system for all medical diagnoses including mental disorders] published by the World Health Organization. The multiaxial diagnostic system was set forth in 1980 with DSM-III and is an integral part of DSM-IV. According to the DSM-IV, the multiaxial system provides a biopsychosocial approach assessment. The system ensures that information needed for treatment planning, prediction of outcome, and research is recorded. The clinician describes the patient's condition using Axes I through V of the multiaxial diagnostic system. Axes I and II of DSM-IV are utilized for multiple diagnoses. Axis I is the category for clinical mental disorders and syndromes, and Axis II is the category for personality disorders and developmental disorders. Axis III is the category for medical, physical disorders or conditions. Axis IV is the category for psychosocial stressors encountered by the patient during the prior 12 months to evaluation. The clinician rates the individual's overall level of functioning on Axis V. *See American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* 25-31 (4th ed. 1994) (Note: the *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (4th ed. Text Revision 2000) (hereinafter *DSM-IV-TR*) was published in the year 2000).

3. Harrison v. U.S., 708 F.2d 1023 (5th Cir. 1983) (claim filed 10 years after medical malpractice was not barred by statute of limitations because the Air Force had actively concealed information and failed to provide the plaintiff with her medical records despite repeated requests).

- Feb 20, 2014 I had a complete Neuropsychological Evaluation. The Carl Metzger exam was introduced as part of my medical records during this evaluation. The fully licensed Clinical Neuropsychologist, Royal Grueneich, Ph.D. had this to say about the Carl Metzger exam:

"Mr. VanWart was given a diagnosis of borderline personality disorder based on a psychiatric evaluation completed by Carl Metzger, M.D., in November, 2003. According to Dr. Metzger's report, the evidence for this diagnosis was based on "his persistent isolation socially, his easy irritability with authority figures of those in his work environment, a sense of emptiness, and a tendency to look for pleasure through solitary activities". However, none of these features except for a sense of emptiness represent diagnostic criteria for borderline personality disorder in DSM-IV. Rather, this disorder is characterized primarily by problems associated with marked affective instability (e.g., suicidal gestures and frantic attempts to avoid abandonment), which are not at all characteristic of Mr. VanWart. There is no support, therefore, for a diagnosis of borderline personality disorder for Mr. VanWart, and this should not be considered as being a valid diagnosis for him."

Not only was the Department of Veterans Affairs exam, by Carl Metzger, factually flawed, it was filled out by Carl Metzger, as indicated on its face, Axis II **"deferred"**. Axis II is the only Axis personality disorders can be diagnosed on using DSM-IV. Nothing about this exam either physically or factually supported a diagnosis of borderline personality disorder as has been claimed by Department of Veterans Affairs employees for in excess of 10 years. Carl Metzger deferred Axis II, did not establish the appropriate diagnostic criteria for borderline personality disorder, and he did not use the required legal language in his medical opinion. Those that knew or should have known the exam was inadequate remained silent and left me to suffer with a total disregard for my health.

My, diagnosed, major depressive disorder, recurrent, moderate (DSM-IV 296.32) and anxiety disorder NOS (DSM-IV 300.00) have been left untreated for years due to medical malpractice through the fraudulent/negligent concealment of the true nature of my exam results. The Department of Veterans Affairs and its employees carried out this concealment through a doctor patient relationship and refusal to conduct a Privacy Officer review of the exam as required by Department of Veterans Affairs policy. Instead the Department of Veterans Affairs and its employees imposed on me a diagnosis of a condition that was never diagnosed. I am now suffering from a diagnosed cognitive disorder, NOS (ICD 294.9) as well. This cognitive disorder has likely been brought on by years of untreated major depression and anxiety. These conditions will likely cause the loss of my employment with the State of Maine as an Eligibility Specialist as I simply cannot learn or execute the work necessary for this position. I lost my job as a Veterans Service Representative and the associated past and future wages, retirement benefits, and health insurance as a result of this. I have suffered loss enjoyment of life and emotional distress. For Jeffrey D. Stacy, Regional Counsel, Department of Veterans Affairs, to say these negligent/wrongful acts did not harm me is just a continuation of the NEGLIGENT/WRONGFUL acts of the past by the Department of Veterans Affairs and its employees.

### III. STATEMENT OF JURISDICTION
Check any of the following that apply to this case (you may check more than one):
United States or a federal official or agency is a party
Claim arises under the Constitution, laws or treaties of the United States
Employment discrimination

### IV. STATEMENT OF VENUE
State briefly the connection between this case and Maine. For example, does a party reside or do business in Maine? Is a party incorporated in Maine? Did an injury occur in Maine? Did the claim arise in Maine?

I live in Maine now and I did at the time this all started. The reason the exam was processed through the Boston Regional Office is because I was a Togus employee and Veteran of the United States Navy. To avoid conflict of interest it was VA policy that all Togus employee claims had to be processed at the Boston Regional Office VA health care facility. The exam was however completed in the State of Maine which is a violation of VA Policy.

I, in fact, never left the State of Maine for a process that never should have occurred in the State of Maine.

## V. RELIEF
State briefly what you want the court to do for you.

## THIS IS A CLAIM FOR DAMAGES IN THE SUM OF $11,494,000.00
Eleven Million Four Hundred and Ninety Four Thousand Dollars.

Lost wages past & future      $46035/yr X 1.1.5 x 24 yr = $1,657,260.00 (2004 Salary used)
Medical treatment    $563.16 x 52=29284.32 per yr x 40 = $1,171,373.00 (2003 Metzger exam rate used)
Loss of Enjoyment of Life/consortium          = $4,200,000.00
Emotional Distress                            = $4,465,367.00
                                     Total  $11,494,000.00

## VI. EXHAUSTION OF ADMINISTRATIVE PROCEDURES
Some claims, but not all, require exhaustion of administrative procedures. Answer the questions below to the best of your ability.

1. Have the claims which you make in this civil action been presented through any type of administrative procedure within any state or federal government agency?

Yes

2. If you answered yes, state the date your claims were so presented, how they were presented, and the result of that procedure:

After the Board of Veterans Appeals denial saying I had a **diagnosis** of Borderline Personality Disorder, on May 8, 2006, I was blocked from further action. They had the law on their side blocking me from further pursuit of the claim and the "doctor's exam" they claimed said I was diagnosed with borderline personality disorder.

Then in January of 2013 after the blunted ACTH test and still trying to get at the truth of my case I found out that Carl Metzger the VA "Doctor" was in the process of loosing his license when he examined me and his exam did not diagnose me with Borderline Personality Disorder at all, after all those years of deception by the VA. I completed an SF 95, Feb 15, 2013, and presented it to the Department of Veterans Affairs through the mail. They denied my claim the first time, June 6, 2013, so I appealed June 17, 2013. They then denied it a second time, Oct 28, 2013, and said I had to list the United States Government as defendant.

3. If you answered no, give the reasons, if applicable, why the claims made in this action have not been presented through administrative procedures: N/A

## VII. ARE YOU REQUESTING TRIAL BY A JURY OR BY A JUDGE? (check one):

JUDGE

## VIII. VERIFICATION

I (we) declare under penalty of perjury that the foregoing is true and correct.

Date(s) Executed:  
MAR 31, 2014

Signature(s) of Plaintiff(s):

Note:
IF YOU CANNOT AFFORD TO PAY THE COURT'S FILING FEE UPON THE FILING OF YOUR COMPLAINT, THERE IS A SEPARATE FORM TO BE USED FOR APPLYING TO PROCEED IN FORMA PAUPERIS. Also, if there is more than one plaintiff in the case who wishes to proceed *in forma pauperis*, **each such plaintiff must submit a separate application to proceed *in forma pauperis*.**